**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| M. SHANKEN COMMUNICATIONS, INC., | : <br> : <br> : |
| Plaintiff | : <br> : |
| -against- | : <br> : |
| MODERN WELLNESS, INC.; CAROL LORAINE ROCHA; and JASON LEWIS ELDER, | : <br> : <br> : <br> : |
| Defendants. | : <br> : |

No. _____

**COMPLAINT**

Plaintiff M. Shanken Communications, Inc. ("M. Shanken" or "Plaintiff"), by its

attorneys Reed Smith LLP, for its Complaint against Modern Wellness, Inc. ("Modern

Wellness"), Carol Loraine Rocha ("Rocha"), and Jason Lewis Elder ("Elder") (together,

"Defendants"), alleges as follows:

**NATURE OF ACTION**

1.      M. Shanken is the publisher of *Wine Spectator*, a multimedia magazine dedicated

to the world of wine, and is the owner of the world-famous WINE SPECTATOR and WS

trademarks which it uses, among other things, in connection with its print and electronic/web-

based magazine, its many wine-related events, and its well-known 100 point scale wine rating

system, including its consumer and oenophile interactive mobile application (hereinafter

collectively, "the WINE SPECTATOR Marks").  M. Shanken brings this action for trademark

infringement, trademark dilution, false designation of origin, and other claims arising from

Defendants' adoption and use of WEED SPECTATOR and WS (hereinafter collectively, "the

WEED SPECTATOR Marks") on its website, in trademark applications, and in connection with

a copycat 100 point rating system for different types of cannabis. The adoption and use of the infringing WEED SPECTATOR Marks has caused and will continue to cause consumer confusion with the WINE SPECTATOR Marks.  It is also causing additional harm to M. Shanken by confusing consumers into believing that M. Shanken is affiliated with a product that is illegal under federal law and the law of the vast majority of the States in the U.S.

2.      M. Shanken owns and operates www.winespectator.com, a website in which users and subscribers can access, among other things: the online version of *Wine Spectator* magazine; ratings for over 377,000 wines; wine-related "news and features"; educational articles and videos relating to the tasting and production of wine; restaurant and wine shop recommendations; and discussion boards.  A core feature of the Wine Spectator brand is wine ratings, which appear in *Wine Spectator* magazine, retail wine establishments, and related venues, and which are also accessible to paying subscribers via an online database and through mobile applications.  M. Shanken is the owner of several federally-registered trademarks regarding the word mark WINE SPECTATOR in block and stylized form.

3.      Defendants are the owners and operators of the website www.weedspectator.com. At Weed Spectator, Defendants maintain a ratings database for cannabis accessible to paying subscribers; provide cannabis-related "news and culture"; and host a small shop selling products infused with Cannabidiol (or "CBD"), a type of cannabis extract.

4.      In a classic case of "passing off," Defendants have copied the Wine Spectator name and blatantly infringed the WINE SPECTATOR Marks in order to trade off of M. Shanken's famous and valuable intellectual property and goodwill.  M. Shanken has worked tirelessly for years to develop this goodwill and has expended tremendous resources to promote and protect the value of the Wine Spectator brand.  Defendants' clear aim is to exploit Plaintiff's

investment and efforts in order to create the belief in the minds of the consuming public that Weed Spectator is affiliated with Wine Spectator, apparently in an attempt to legitimize Defendants' brand and drive website traffic and revenue.  And it is working – indeed, evidence exists demonstrating actual confusion in the marketplace, which is not surprising considering that Defendants have ripped off Plaintiff's name and wine ratings model and applied it to cannabis.

5.      Plaintiff has no interest in associating *Wine Spectator* magazine and its affiliated brands with cannabis, a drug that cannot legally be consumed recreationally in 42 states and under federal law, and Defendants have not been authorized to use the WINE SPECTATOR Marks in connection with their business.  Plaintiff brings this action to immediately halt Defendants' intended and willful infringement, which violates both federal and state law, and to recover monetary damages (including attorneys' fees and costs) for injury sustained in diluting the WINE SPECTATOR Marks and creating the false impression that WEED SPECTATOR is affiliated with, or authorized by, Plaintiff.

## JURISDICTION AND VENUE

6.      This Court's jurisdiction arises from the fact that: (i) this is an action brought under the Trademark Laws of the United States, 15 U.S.C. §§ 1051 et seq., jurisdiction being conferred by 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338; (ii) this is a civil action in which Plaintiff and Defendants are citizens of different states and the value of the matter in controversy exceeds seventy-five thousand dollars ($75,000) exclusive of interest and costs, jurisdiction being conferred under 28 U.S.C. § 1332(a); and (iii) Plaintiff's state and common law claims are joined and related pursuant to 28 U.S.C. §§ 1367(a) and 1338(b).

7.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants are subject to personal jurisdiction in this District and because a substantial portion of the events or acts complained of occurred within this District.

**PARTIES**

8.      Plaintiff M. Shanken is a New York corporation with its principal place of business at 825 Eighth Avenue, 33rd Floor, New York, NY 10019.  M. Shanken is in the magazine publishing business, and has developed several well-known and well-regarded titles, including *Wine Spectator*, which has built a reputation as being an authoritative source of information for wine drinkers, enthusiasts, and merchants.

9.      Upon information and belief, Defendant Modern Wellness is a California corporation with its principal place of business at 5861 88th Street, Suite 300B, Sacramento, CA 95828.

10.      Upon information and belief, Defendant Rocha is Chief Executive Officer of Modern Wellness and resides at 120 Grey Canyon Drive, Folsom, CA 95630.  Upon information and belief, Defendant Rocha is a conscious, dominant, and active force behind the wrongful acts of Defendant Modern Wellness complained of herein, which wrongful acts she has engaged in for the benefit of Modern Wellness and for her own individual gain and benefit.

11.      Upon information and belief, Defendant Elder is an officer or other managing agent of Modern Wellness and resides at 120 Grey Canyon Drive, Folsom, CA 95630.  Upon information and belief, Defendant Elder is a conscious, dominant, and active force behind the wrongful acts of Defendant Modern Wellness complained of herein, which wrongful acts he has engaged in for the benefit of Modern Wellness and for his own individual gain and benefit.

## FACTUAL BACKGROUND

### The WINE SPECTATOR Marks

12.     M. Shanken publishes *Wine Spectator* magazine, the premier and worldwide authoritative publication on wine, wine growers, vineyards and wine tasting, both digitally and in print.  M. Shanken also owns and operates www.winespectator.com, where paying subscribers can access *Wine Spectator* magazine as well as a vast database of wine ratings.  Users can also access various assortments of wine-related content, such as news articles (in the "News & Features" section), videos, restaurant and wine shop recommendations, blogs, and discussion boards.  M. Shanken derives substantial revenue from the *Wine Spectator* website through, among other things, sales of goods and magazine subscriptions and the sale of advertisements.

13.     M. Shanken also owns and operates several mobile applications ("apps") under the *Wine Spectator* and *WS* brands, one of which, "WineRatings+," allows subscribers easy access to the wine reviews database and provides expert advice for selecting and/or learning about wine.  M. Shanken derives revenue from subscriptions to the premium versions of its apps.

14.     The flagship features of the *Wine Spectator* and *WS* brands are the wine ratings databases, which are available to subscribers online and through the app.  *Wine Spectator* editors review more than 15,000 wines each year in blind tastings.  Tasters review these wines on a 100-point scale:

- **95-100** Classic: a great wine
- **90-94** Outstanding: a wine of superior character and style
- **85-89** Very good: a wine with special qualities
- **80-84** Good: a solid, well-made wine
- **75-79** Mediocre: a drinkable wine that may have minor flaws
- **50-74** Not recommended

15.     M. Shanken owns several trademarks in connection with the *Wine Spectator* and *WS* brands.  The classic stylized Wine Spectator mark, which is federally registered with no limitation as to color, is represented below:

# Wine Spectator

16.     The block letter version of the mark, which has been used in commerce by M. Shanken since April 1976, was registered with the United States Patent and Trademark Office on December 24, 1996 under U.S. Trademark Reg. No. 2025420.  A true and correct copy of the registration certificate is attached hereto as **Exhibit A**.  The mark was registered in connection with "publications, namely, magazines, books, pamphlets, newsletters, printed charts, journals and guides all on the subject of wine."

17.     M. Shanken registered the stylized version of this mark – the exact same font and stylization as employed by Defendants – with no limitation as to color, in connection with "magazines and books featuring the subject of wine" on April 22, 1997 under U.S. Trademark Reg. No. 2054781.  A true and correct copy of the registration certificate is attached hereto as **Exhibit B**.

18.     M. Shanken registered the block letter version of the *Wine Spectator* mark in connection with "computer services, namely, providing on-line magazines in the field of wine" on May 8, 2007 under U.S. Trademark Reg. No. 3239441.  A true and correct copy of the registration certificate is attached hereto as **Exhibit C**.

19.     M. Shanken registered the stylized version of this mark – the exact same font and stylization as employed by Defendants – with no limitation as to color, in connection with

"computer services, namely, providing on-line magazines in the field of wine" on January 20, 1998 under U.S. Trademark Reg. No. 2131129 .  A true and correct copy of the registration certificate is attached hereto as **Exhibit D**.

20.    The registrations for the WINE SPECTATOR Marks are valid and subsisting, unrevoked, uncancelled, and all have acquired incontestable status pursuant to 15 U.S.C. § 1065.

21.    M. Shanken has used in commerce, advertised, and promoted its *WS* logo for years in connection with its magazines, both print and electronic, and related core activities. Since 2012, M. Shanken also has used the *WS* logo in connection with the marketing, promotion, and sale of its WineRatings+ app, one example of which is represented below:



22.    Since April 1976, M. Shanken has continuously advertised, promoted, and offered goods and services via use of the WINE SPECTATOR Marks.  As a result, the WINE SPECTATOR Marks have acquired a substantial reputation of high quality for the goods and services as to which these marks have been and continue to be used.

23.    As a result of this long and substantial use, the WINE SPECTATOR Marks have individually and collectively come to identify M. Shanken's goods and services and distinguish them from those of others.  The WINE SPECTATOR Marks have come to represent and symbolize the significant goodwill belonging exclusively to M. Shanken.

24.    The WINE SPECTATOR Marks are valuable business and marketing assets to M. Shanken, as they indicate to consumers the source of the high-quality services originating only from M. Shanken.

25.    M. Shanken has expended substantial time, effort, and money in advertising, promoting, and marketing the WINE SPECTATOR Marks throughout the world for decades.  As a result, the WINE SPECTATOR Marks have become famous and distinctive and enjoy enormous consumer recognition.

### Defendants and Their Infringing Activities

26.    Defendants are the owners and operators of the website www.weedspectator.com, the home of "Weed Spectator."  Weed Spectator is primarily an online cannabis rating company. Defendants also post articles in their "News and Culture" section and sell a variety of products infused with CBD.  The ratings database is accessible to subscribers and contains ratings given to particular cannabis strains produced by various growers.

27.    Defendants also maintain a Facebook page and an Instagram account for Weed Spectator, both of which have information about Weed Spectator's business and update followers as to Defendants' actions.  The Facebook page has approximately 3,900 followers, and the Instagram account has approximately 15,000 followers.

28.    Weed Spectator's website and social media pages display striking similarities to the Wine Spectator website and e-magazine.  For instance, the Weed Spectator website has a "News and Culture" page, which is almost exactly identical to Wine Spectator's "News & Features" page.

29.    Additionally, on its Facebook page, Weed Spectator touts its "unbiased blind tasters rating harvests from National Growers on a 100 Point Scale providing consumers access to a consistent reliable database."  This is precisely the same method of tasting and rating scale

used by *Wine Spectator*.  Similar content is promoted on the Weed Spectator website, as

Defendants advertise the "100 Point Ratings Database," displaying a print magazine bearing the

same unique look, feel and dimensions of the *Wine Spectator* print magazine, as represented

below:

 

30.     The Facebook page also continuously associates the Weed Spectator business

with wine.  On August 10, 2018, Defendants posted a picture of a luncheon with the caption:

"The wine and weed world met in Santa Rosa last week to educate each other on their industries

workings."  On August 2, 2018, Defendants posted that they were "#live at the

#wineandweedsymposium."  The wine and weed symposium was hosted at the Hyatt Regency

Sonoma.  On July 11, 2018, Defendants posted that they were a "#proud #sponsor of the #2018

@wineweedsymposium."  Defendants continuously utilize the hashtag "#wineandweed" in

connection with their posts on their Facebook page, as in posts from February 24 and February

15, 2018.  And on December 31, 2017, Defendants promoted their "lounge and event center," which featured "food, wine and weed pairings in a sophisticated space with like minded people."

31.     To further the confusion, searching the term "Weed Spectator" over Apple's "App Store" results in five Wine Spectator brand apps appearing on the screen, an example of which is represented below:



32.     Searching the term "Weed Spectator" on Google returns a Wine Spectator article from its "News & Features" page on the first page of results (Google search available at:

https://www.google.com/search?q=weed+spectator&oq=weed+&aqs=chrome.0.69i59j69i60l2j6 9i57j69i60j0.1810j0j4&sourceid=chrome&ie=UTF-8).

33.     On January 2, 2018, Defendants applied for two trademarks.  The first, WEED SPECTATOR in block letters, Serial No. 87740880, is based on a claim of use in commerce since October 7, 2017, covering "on-line digital publications in the nature of education in the field of cannabis via the Internet."

34.     The second application, under Serial No. 87740891, is for the composite stylized mark WEED SPECTATOR WE RATE. YOU SCORE, filed on January 2, 2018 claiming a first use date of October 7, 2017, covering "on-line digital publications in the nature of education in the field of cannabis via the Internet."  The composite mark, which employs the exact same font and stylization for the WEED SPECTATOR portion as Plaintiff's WINE SPECTATOR mark, is displayed as follows:



(The marks represented in Serial Nos. 87740880 and 87740891, both of which are pending formal review by the Trademark Office, make up the WEED SPECTATOR Marks).  As is apparent on its face, the mark in Serial No. 87740891 directly copies the formatting, font, and style of the WINE SPECTATOR stylized mark.  Specifically, the lettering is an exact replica, down to the capitalization of the first "W" and "S" and the elongated "p" in the word "Spectator."

35.     Moreover, Defendants make use of a WS logo that M. Shanken uses in connection with *Wine Spectator* on its web and social media sites, including but not limited to the Weed Spectator Instagram page:



36.     Weed Spectator, at all times under the direction and control of individual Defendants Rocha and Elder, has purposefully associated its business – and the WEED SPECTATOR Marks – with *Wine Spectator* and the WINE SPECTATOR Marks.  Defendants have done this willfully and intentionally in order to confuse and mislead the consuming public into believing that *Wine Spectator* endorses, or is affiliated with, Defendants' business.  In order to accomplish such confusion, Defendants have co-opted Plaintiff's WINE SPECTATOR Marks exactly and adopted a similar WS logo; copied the style and design of certain aspects of the Wine Spectator website as well as Wine Spectator's rating methodology; and have systematically given the impression that Weed Spectator is associated with wine products and culture.

37.     Defendants have had success in causing actual confusion in the marketplace.  In just one representative example, in a YouTube post from December 2017 (available at: https://www.youtube.com/watch?v=GA44MDtZjEI) the company "The Contact Buzz" published an interview with Weed Spectator from the "Emerald Cup 2017."  The write-up to the post specifically refers to Weed Spectator as "Wine Spectator," as represented below:



**The Contact Buzz**
Published on Dec 14, 2017

The Emerald Cup of 2017 is in full swing with the vibrant chatter of happy people as we make our way through the crowd  to talk with Thomas from Weed Spectator about a few of his favorite strains. Working directly with small farms, they help emerging companies make a name for their product through their professional rating system, giving every bud a fair chance to be heard and smoked.
At Weed Spectator all tastings are done blindly to ensure a non-bias approach to each rating, and as a result the strains we know and love can be graded for quality per farm and batch. By Weed Spectator policy none of the tasters are allowed to accept monetary favors in anyway, and must remain financially independent from the cannabis industry to ensure their non-bias stance.
Studies show that fore-knowledge of certain companies who have invested in advertisement, and packaging can sometimes influence judges decisions before the tasting even occurs. Blind tasting helps to ensure that the tasters at Weed Spectator are not swayed in anyway by anything but the bud to ensure as accurate a judgment as possible.
 Every tasting is done by a panel of 3 tasters, one of which is always a strain specialist, a lead taster that covers the same strain on a regular basis. With a 100 point scoring chart ranging from Exceptional to Acceptable, Weed Spectator's educated opinion seems worth hearing out. You can find them at WeedSpectator.com, become a member, and even gift a membership to another.
Coming up next we proceed into the festivities of the Emerald Cup of 2017 and talk with Jeremy from Fable Rosin, a company involved with fine wax and dabs. Stay tuned.

Learn more about Wine Spectator: http://weedspectator.com/

38.     On information and belief, Defendants began to use the WEED SPECTATOR Marks and WS logo in connection with the operation of their cannabis business with full knowledge of Plaintiff's rights in the WINE SPECTATOR Marks.  Indeed, Defendants – and the world at large – have been on notice since the marks were registered beginning in 1996 that M. Shanken owns the marks and the marks identify the source of Plaintiff's high quality goods and services under the WINE SPECTATOR Marks.

39.     Defendants' unauthorized use of the WINE SPECTATOR Marks is likely to cause confusion and deceive members of the public as to the true origin of Defendants' products and services.  This unauthorized use also irreparably injures Plaintiff by depriving Plaintiff of the right to control the WINE SPECTATOR Marks and the quality of the services with which these infringing marks are used.

40.     M. Shanken has no interest in associating *Wine Spectator* and the WINE SPECTATOR Marks with cannabis, a largely illegal drug.  Any association of this type is likely to tarnish the reputation and goodwill that has been built up in the WINE SPECTATOR Marks and business for decades, resulting in dilution of the brand.

41.     Upon information and belief, the www.weedspectator.com website, and Weed Spectator's social media pages, continue to be accessible to the public, and these have been, at all relevant times, operated and controlled by the individual Defendants Rocha and Elder.

42.     Defendant's infringement of Plaintiff's rights in and to the WINE SPECTATOR Marks has been and continues to be knowing, willful, and egregious and constitutes intentional or reckless disregard of Plaintiff's rights as registrant and owner of the WINE SPECTATOR Marks.

43.     As corporate officers, the individual Defendants Rocha and Elder have been the moving, active, and conscious forces behind Defendant Modern Wellness's willfully infringing acts.  The individual Defendants, at all relevant times, approved, authorized, and/or directly participated in these infringing acts.

## COUNT I
### (Lanham Act Trademark Infringement, 15 U.S.C. § 1114, § 1116)

44.     M. Shanken repeats and realleges each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

45.     M. Shanken is the owner of the federal trademark registrations for the WINE SPECTATOR Marks.

46.     By its registration and extensive use and promotion of the federally registered WINE SPECTATOR Marks, M. Shanken has established a strong association in the public mind between the WINE SPECTATOR Marks and the goods and services offered by M. Shanken.

47.     Without authorization or consent, Defendant Modern Wellness, through the conscious and deliberate acts of the individual Defendants Rocha and Elder, has reproduced and/or copied the WINE SPECTATOR Marks in connection with the offering for sale, distribution, and/or advertisement of its goods and services under the WEED SPECTATOR brand.

48.     Defendants' aforesaid activities have caused or are likely to cause confusion, mistake, or deception among relevant consumers, who have been deceived into believing that Defendants' goods and services under the WEED SPECTATOR brand are connected with, or sponsored or approved by, M. Shanken.  This has been to the detriment of M. Shanken's reputation, goodwill, and sales.

49.     Defendants' unlawful acts constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

50.     On information and belief, Defendants' acts have been willful, deliberate, and intended to benefit Defendants at M. Shanken's expense.

51.     M. Shanken has suffered, and will continue to suffer, monetary damages as a result of Defendants' unlawful acts in an amount to be determined at trial.

52.     However, M. Shanken has no adequate remedy at law to compensate it fully for the damages which would be caused by any further infringement of the WINE SPECTATOR Marks by Defendants, unless future unlawful acts and infringements of this kind are enjoined by this Court.

53.     This is an exceptional case under 15 U.S.C. § 1117.

## COUNT II
### (Lanham Act Unfair Competition, 15 U.S.C. § 1125(a))

54.     M. Shanken repeats and realleges each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

55.     By misappropriating, using, and/or attempting to register marks confusingly similar to the federally registered WINE SPECTATOR Marks, including copying Plaintiff's exact font and stylization, Defendant Modern Wellness, through the conscious and deliberate acts of the individual Defendants Rocha and Elder, has misrepresented to the relevant consuming public that M. Shanken has endorsed, sponsored, and/or is affiliated with Defendants and their goods and services under the WEED SPECTATOR brand, thereby creating a likelihood of confusion as to the source or sponsorship of Defendants' advertising, business, goods, and services.

56.     Defendants' unlawful conduct constitutes unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

57.     On information and belief, Defendants' acts have been willful, deliberate, and intended to benefit Defendants at M. Shanken's expense.

58.     M. Shanken has suffered, and will continue to suffer, monetary damages as a result of Defendants' unlawful acts in an amount to be determined at trial.

59.     However, M. Shanken has no adequate remedy at law to compensate it fully for the damages which would be caused by any further infringement of the WINE SPECTATOR Marks by Defendants, unless future unlawful acts and infringements of this kind are enjoined by this Court.

60.     This is an exceptional case under 15 U.S.C. § 1117.

## COUNT III
## (Lanham Act Unfair Competition, 15 U.S.C. § 1125(a))

61.     M. Shanken repeats and realleges each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

62.     By misappropriating and using marks confusingly similar to Plaintiff's *WS* mark in their advertising and business, Defendant Modern Wellness, through the conscious and deliberate acts of the individual Defendants Rocha and Elder, has misrepresented to the relevant consuming public that M. Shanken has endorsed, sponsored, and/or is affiliated with Defendants and their goods and services under the WEED SPECTATOR brand, thereby creating a likelihood of confusion as to the source or sponsorship of Defendants' business, goods, and services.

63.     Defendants' unlawful conduct constitutes unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

64.     On information and belief, Defendants' acts have been willful, deliberate, and intended to benefit Defendants at M. Shanken's expense.

65.     M. Shanken has suffered, and will continue to suffer, monetary damages as a result of Defendants' unlawful acts in an amount to be determined at trial.

66.     However, M. Shanken has no adequate remedy at law to compensate it fully for the damages which would be caused by any further infringement of the *WS* mark by Defendants, unless future unlawful acts and infringements of this kind are enjoined by this Court.

67.     This is an exceptional case under 15 U.S.C. § 1117.

## COUNT IV
## (Trademark Dilution in Violation of 15 U.S.C. § 1125(c))

68.     M. Shanken repeats and realleges each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

69.     The WINE SPECTATOR Marks are famous marks within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)(1), and have been famous marks prior to Defendants' wrongful conduct.

70.     Defendant Modern Wellness, through the conscious and deliberate acts of the individual Defendants Rocha and Elder, has disparaged, tarnished, and blurred the WINE SPECTATOR Marks for the purpose of advertising, promoting and offering Defendants' goods and/or services under the WEED SPECTATOR brand, which constitutes dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)(1).

71.     M. Shanken has suffered, and will continue to suffer, monetary damages as a result of Defendants' unlawful acts in an amount to be determined at trial.

72.     However, M. Shanken has no adequate remedy at law to compensate it fully for the damages which will continue to be caused by Defendants' unlawful acts and will continue to

suffer irreparable harm and injury to its goodwill and reputation unless Defendants' unlawful conduct is enjoined by this Court.

73.     Defendants' conduct is knowing, intentional, malicious, deliberate, willful, wanton, reckless, and egregious and is being carried out with the intent to cause confusion, mistake, or deception and to injure Plaintiff.

74.     This is an exceptional case under 15 U.S.C. § 1117.

**COUNT V**
**TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**
**(New York Law)**

75.     M. Shanken repeats and realleges each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

76.     Defendants' unauthorized use and attempted registration of marks confusingly similar to the WINE SPECTATOR Marks is likely to cause confusion, mistake, or deception with Plaintiff or its products or services bearing the WINE SPECTATOR Marks, or result in the mistaken belief by purchasers and others that Defendants or their products or services under the WEED SPECTATOR brand are sponsored, approved or licensed by Plaintiff, or are otherwise connected to Plaintiff.

77.     Defendants' unauthorized use of marks confusingly similar to the WINE SPECTATOR Marks constitutes trademark infringement and unfair competition in violation of the laws of the state of New York, including, but not limited to, N.Y. General Business Law § 360-k and § 360-o.

78.     On information and belief, Defendants' activities have been willful, intentional, or in reckless disregard of Plaintiff's aforesaid rights.

79.     By reason of Defendants' acts as alleged above, Plaintiff has suffered, and will continue to suffer, damage and injury to its business and reputation, and may sustain serious losses of revenues and profits.  Plaintiff may have already suffered monetary damages in an indeterminate amount.

80.     Defendants' aforesaid acts are greatly and irreparably damaging to Plaintiff and will continue to damage Plaintiff unless enjoined by this Court.  Plaintiff is without adequate remedy at law.

**COUNT VI**
**TRADEMARK DILUTION**
**(New York Law)**

81.     M. Shanken repeats and realleges each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

82.     Defendants' wrongful acts are likely to cause injury to Plaintiff's business reputation or to dilute the distinctive quality of the famous WINE SPECTATOR Marks.

83.     Defendants' acts began long after the WINE SPECTATOR Marks became distinctive and famous, and are in violation of N.Y. General Business Law § 360-l.

84.     By reason of Defendants' acts as alleged above, Plaintiff has suffered, and will continue to suffer, damage and injury to its business and reputation, and may sustain serious losses of revenues and profits.  Plaintiff may have already suffered monetary damages in an indeterminate amount.

85.     Defendants' aforesaid acts are greatly and irreparably damaging to Plaintiff and will continue to damage Plaintiff unless enjoined by this Court.  Plaintiff is without adequate remedy at law.

**WHEREFORE,** Plaintiff prays:

A.     That Defendants and their officers, agents, servants, employees, attorneys, and all others in active concert and participation with any of them, individually and collectively, be preliminarily and permanently enjoined from:

(i) using the WEED SPECTATOR Marks, the WS mark, or any name, mark, or trade dress, that is likely to cause confusion with the WINE SPECTATOR Marks, including, but not limited to, WEED SPECTATOR;

(ii) doing any other act or thing likely to confuse, mislead, or deceive others into believing that Defendants' goods and services emanate from, or are connected with, sponsored by, or approved by Plaintiff;

(iii) doing any other act or thing which is likely to dilute the distinctive quality of the WINE SPECTATOR Marks;

(iv) doing any other act or thing likely to tarnish or injure Plaintiff's business reputation; and

(v) assisting, aiding, or abetting any other person or entity in engaging in any of the activities prohibited in paragraphs (i) through (iv).

B.     That Defendants be required to pay to Plaintiff:

(i) in accordance with 15 U.S.C. § 1117(a), an award of treble the actual damages suffered by Plaintiff, and the wrongful profits enjoyed by Defendants, enhanced as the Court deems appropriate, as well as Plaintiff's costs and attorneys' fees;

(ii) in accordance with N.Y. GBL § 360-m, an award of treble the actual damages suffered by Plaintiff, as well as Plaintiff's costs and attorneys' fees;

(iii) in accordance with New York common law, Plaintiff's actual damages or Defendants' profits; and

(iv) in accordance with 15 U.S.C. § 1117, prejudgment interest.

C.      That Defendants deliver up for destruction all products and any other material of an infringing or unfair nature in Defendants' possession or control, as well as all means of making the same in accordance with 15 U.S.C. § 1118.

D.      That Defendants be required to file with this Court and serve on Plaintiff a report in writing under oath setting forth in detail the manner and form in which they have complied with the terms of any injunction entered by this Court, in accordance with 15 U.S.C. § 1116(a).

E.      That Plaintiff be granted such other and further relief as this Court deems just and proper.

Dated: New York, New York
       September 4, 2018

REED SMITH LLP

By: *  /s/ Peter D. Raymond  *
      Peter D. Raymond
      Henry G. Ciocca, III

599 Lexington Avenue
New York, New York 10022
Tel: (212) 521-5400
Fax: (212) 521-5450
praymond@reedsmith.com
hciocca@reedsmith.com

*Attorneys for Plaintiff M. Shanken Communications, Inc.*

- 21 -